# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

| | |
|---|---|
| Jerry L. DuBois, | |
|     Plaintiff, | 3:13-cv-00177 JWS |
|     vs. | ORDER AND OPINION |
| Coeur Alaska, Inc., d.b.a. Kensington Mine; Coeur Mining, Inc.; and Coeur d'Alene Mines Corp., | [Re: Motions at Docket 33, 34] |
|     Defendants. | |

## I. MOTION PRESENTED

Defendants Coeur Alaska, Inc., d.b.a. Kensington Mine, Coeur Mining, Inc., and Coeur d'Alene Mines Corp. (collectively, "Coeur") filed two motions for partial summary judgment pursuant to Rule 56(a). Coeur's first partial summary judgment motion, at docket 33, seeks an order establishing that the actions of plaintiff Jerry L. DuBois ("DuBois") amount to contributory negligence. DuBois opposes this motion at docket 47, and Coeur replies at docket 55.

Coeur's second partial summary judgment motion, at docket 34[1], seeks an order establishing that DuBois lacks sufficient evidence to show that he has suffered a severe permanent physical impairment under AS 09.17.010(c). Coeur's memorandum in support of this motion is at docket 35. DuBois opposes the motion at docket 46, and Coeur replies at docket 62.

At docket 63 DuBois filed a motion for leave of court to file affidavits from experts Terrance Dinneen and Robert R. Stephens in support his two oppositions. The court grated this motion at docket 65. Oral argument was not requested and would not assist the court.

## II. BACKGROUND

DuBois was working as a mine safety inspector for the U.S. Department of Labor when he fell from a deck and was injured at Coeur's Kensington Mine.[2] DuBois claims that the deck's guard railing broke when he leaned against it, causing him serious injuries.[3] DuBois brought a negligence action against Coeur in state court, which Coeur removed to this court.[4]

DuBois' complaint alleges that the railing was defective because, among other things, it was attached to the outside of its 4x4 support posts, meaning that "structural integrity of the guard rail relied entirely on the fasteners used to secure the railing and

---

[1]Coeur styled its motion as a Rule 56 "motion for rule of law," but Rule 56 does not recognize any such motion—Rule 56 governs summary judgment. Coeur's motion is properly characterized as a partial summary judgment motion.

[2]Doc. 1-1 at 1 ¶¶ 1, 4; *id.* at 16-17 ¶¶ 1, 4.

[3]*Id.* at 1-2 ¶ 4.

[4]Doc. 1.

not on the actual strength of the rails themselves against the posts."[5] DuBois also alleges that the railing's metal fasteners were "rusted to the point of failure."[6]

### III. STANDARD OF REVIEW

Rule 56(a) authorizes motions for partial summary judgment upon any part of a claim or defense. Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7] The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[8] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[9] However, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[10]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[11] Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[12] Once the moving party has met this burden, the nonmoving party

---

[5]Doc. 1-1 at 2 ¶ 8.

[6]*Id.*

[7]Fed. R. Civ. P. 56(a).

[8]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[9]*Id.*

[10]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[11]*Id.* at 323.

[12]*Id.* at 323-25.

must set forth evidence of specific facts showing the existence of a genuine issue for trial.[13] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[14] However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[15]

## IV. DISCUSSION

### A. Comparative Fault is a Fact Question

Alaska's comparative fault statute provides in pertinent part that

> [i]n all actions involving fault of more than one person . . . the court . . . shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings, indicating (1) the amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and (2) the percentage of the total fault that is allocated to each . . . person responsible for the damages.[16]

The statute makes clear that comparative fault determinations are the province of the fact finder: here, the jury.[17] Although Coeur recognizes that it would be inappropriate for the court to usurp the jury's task of apportioning fault,[18] its motion nevertheless seeks judgment as a matter of law that DuBois' actions amount to contributory negligence. In

---

[13]*Anderson,* 477 U.S. at 248-49.

[14]*Id.* at 255.

[15]*Id.* at 248-49.

[16]AS 09.17.080(a).

[17]DuBois filed a jury demand in state court. Doc. 1-1 at 5. *See also S. Alaska Carpenters Health & Sec. Trust Fund v. Jones*, 177 P.3d 844, 858 (Alaska 2008) (noting that apportionment of fault under AS 09.17.080 is question of fact); *State v. Kaatz*, 572 P.2d 775, 781 (Alaska 1977) ("[I]t is clear [that] the apportionment of percentages is a question of fact, not of law.").

[18]Doc. 33 at 6 n.38.

other words, Coeur is asking the court to apportion fault to DuBois at a percentage greater than zero. This, the court cannot do.

Coeur cites a case from the Eastern District of California, *United States v. Sierra Pacific Industries*,[19] in support of its argument that the court should determine DuBois' contributory negligence as a matter of law. The *Sierra Pacific* court ruled as a matter of law that the plaintiff could not be at fault for certain conduct because it owed no duty to act under the circumstances.[20] This holding is inapplicable here because it pertains to whether a party owed a duty of care. It is appropriate for a court to resolve this question because "[t]he existence and extent of a duty of care are questions of law for the court to determine."[21] The questions presented here are of a different variety: Coeur states that the two questions presented are "whether DuBois breached his duty as a mine inspector to competently [] inspect the handrail" and whether he should therefore "be allocated comparative fault."[22] Because breach and causation present questions of fact,[23] Coeur's motion will be denied.

**B.    Severe Permanent Physical Impairment**

Alaska Statute 09.17.010 generally caps noneconomic damages arising out of a single injury or death at "$400,000 or the injured person's life expectancy in years multiplied by $8,000, whichever is greater."[24] This cap is raised to "$1,000,000 or the

---

[19]879 F. Supp. 2d 1128, 1134 (E.D. Cal. 2012).

[20]*Id.* at 1134. The court also held that whether the plaintiff's conduct otherwise comported with the requisite standard of care presented a triable question of fact. *Id.* at 1135.

[21]*Beck v. State, Dep't of Transp. & Pub. Facilities*, 837 P.2d 105, 109 (Alaska 1992).

[22]Doc. 55 at 1.

[23]*Bolieu v. Sisters of Providence in Washington*, 953 P.2d 1233, 1235 (Alaska 1998). *See also Kelley v. Hyundai Motor Co.*, No. 4:09CV000894 JMM, 2011 WL 1533456, at *3 (E.D. Ark. Apr. 21, 2011) ("Because disputed issues of fact exist on the issue of proximate cause, the Court finds that summary judgment is not proper.").

[24]AS 09.17.010(b).

person's life expectancy in years multiplied by $25,000, whichever is greater" if "the damages are awarded for severe permanent physical impairment or severe disfigurement."[25] Coeur seeks a ruling that the lower cap applies here because DuBois cannot show he has suffered a severe permanent physical impairment.

Prior to its amendment in 1997,[26] AS 09.17.010 provided that there was no cap on noneconomic damages for "severe physical impairment."[27] The Alaska Supreme Court interpreted this phrase in *State v. Johnson*,[28] by reference to the definition of "physical impairment" found in Title 45, Part 84, of the Code of Federal Regulations.[29] That regulation defines "physical impairment" as "any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine."[30] Although *Johnson* did not define the precise contours of which impairments qualify as "serious," it held that the impairment before the court so qualified because it caused the loss of "the normal use of a body system necessary for day-to-day life."[31] This language appears to track the definition of "handicapped person" from 45 C.F.R. § 84.3(j) as meaning someone whose physical impairment "substantially limits one or more major life activities,"[32] including

---

[25] AS 09.17.010(c).

[26] 1997 ALASKA SESS. LAWS, ch. 26 § 9.

[27] AS 09.17.010(c) (1996). *See also State, Dep't of Corr. v. Johnson*, 2 P.3d 56, 64 (Alaska 2000).

[28] *Johnson*, 2 P.3d at 65.

[29] *Id.* at 65 n.42.

[30] 45 C.F.R. § 84.3(j)(2)(i).

[31] *Johnson*, 2 P.3d at 65.

[32] 45 C.F.R. § 84.3(j)(1).

"caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."[33]

The word "permanent" was added to AS 09.17.010(c) in 1997. The Alaska Supreme Court has described "severe permanent physical impairments" as those that "are so significant that they will permanently and seriously alter the course of the injured person's life."[34] The question whether a person has suffered a severe permanent physical impairment is ordinarily a question of fact for the jury, but it can be answered as a matter of law where reasonable persons cannot differ as to the facts.[35] The trial court must make a threshold determination that a juror could reasonably find that the plaintiff suffered from such an impairment before submitting that question to the jury.[36]

Coeur does not dispute that DuBois' injury, which it describes as "a compression fracture of his T-11 vertebra," qualifies as a "physical impairment."[37] Instead, it argues that his subsequent "medical consultations, steroidal injections, and physical therapy" led to improvements and, as of January 2013, his physical impairment was no longer severe or permanent.[38] It relies on two pieces of evidence. First, Coeur cites a January 29, 2013 functional capacity evaluation ("FCE") performed by physical therapist Shasta K. Hood.[39] Ms. Hood's FCE concludes that DuBois "demonstrated the ability to meet the physical demand requirements of a Supervisory Mine Inspector."[40] The FCE

---

[33]*Id.* § 84.3(j)(2)(ii).

[34]*L.D.G., Inc. v. Brown*, 211 P.3d 1110, 1136 (Alaska 2009).

[35]*Johnson*, 2 P.3d at 65.

[36]*Cf. City of Bethel v. Peters*, 97 P.3d 822, 828 (Alaska 2004).

[37]Doc. 35 at 12.

[38]*Id.* at 12-14.

[39]Doc. 34-8 at 1-9; Doc. 34-9 at 1-4; Doc. 34-10 at 1.

[40]Doc. 43-8 at 1.

also concludes, however, that "[d]eficits identified during testing include significant deficits in cervical, thoracic, and lumbar spine ROM, Strength deficits noted in L UE and LE. Moderate symptom increase with push/pull activities."[41] Next, Coeur cites the report of Dennis Chong, MD, a physiatrist that it retained to review DuBois' medical records. Dr. Chong's report states that he reviewed DuBois' medical history and deposition testimony. He states that he specifically reviewed the FCE, and he concludes without explanation that it is "valid and reliable."[42]

DuBois contends that his back injury is severe and permanent. Among other things, he cites:

- A February 21, 2013 report of Larry A. Levine, M.D. that apparently concludes that it would not be safe for DuBois to work as a full time Supervisory Mine Inspector;[43]
- A July 18, 2013 report of Occupational Medicine Consultant Neal L. Presant, M.D., M.P.H. that concludes that DuBois' back condition is likely permanent, "[h]e is limited in his ability to perform any heavy labor," "[h]eavy lifting, squatting, climbing ladders, and walking on uneven ground could be hazardous for him,"[44] "he would have permanent limitations from his back that would prevent him from doing any work that required more than light physical labor,"[45] and his medical condition limits his following major life activities: ambulation, lifting, and general mobility.[46]

---

[41]*Id.*

[42]Doc. 34-7 at 14.

[43]Doc. 34-4 at 11.

[44]Doc. 51-6 at 1.

[45]*Id.* at 2.

[46]*Id.*

-8-

- An August 14, 2015 affidavit of his treating physician, Susan Klimow, M.D., who states that (at least as of November 2014, when she stopped treating him) DuBois was unable to do his job as a mine inspector based on the symptoms of his lower back pain that radiated to his leg.[47]
- DuBois' own deposition testimony where he states that as a result of his injury he is no longer able to perform activities such as cooking, grocery shopping, household repairs, yard work, sex, fishing or hunting.[48]

Coeur has not met its burden of showing that there is no genuine dispute as to the severity or permanency of DuBois' physical impairment. Its evidence tends to show that DuBois is capable of performing the job requirements of a mine inspector, but this is not the same thing as establishing that DuBois' impairment is neither severe nor permanent. Further, DuBois' evidence affirmatively demonstrates a genuine dispute as to these issues. Because a jury could reasonably find that DuBois' fall caused him to suffer a severe permanent physical impairment, Coeur's motion will be denied.

## IV. CONCLUSION

Based on the preceding discussion, Coeur's motions for partial summary judgment at docket 33 and 34 are **DENIED**.

DATED this 19th day of November 2015.

/s/ JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE

---

[47]Doc. 51-1 at 1-2.

[48]Doc. 46 at 8-10.